UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CR-00067-RLW-1 |
| | ) |
| CEVONE WEEDEN, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Cevone WEEDEN, represented by defense counsel Patrick Kilgore, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary pleas of guilty to Counts One and Two of the Indictment, the government agrees that no further federal prosecution will be brought in this District relative to the Defendant's conspiracy to distribute controlled substances, and unlawful possession and use of firearms,

Page 1 of 17

including such possession that caused the death of Victim Joel Phillips, as reflected in the Indictment and in this Agreement, of which the Government is currently aware.

In addition, the government agrees to not seek statutory enhancement of defendant's sentence pursuant to Title 21, United States Code, Section 851(a) related to Defendant's felony conviction for Manufacture/Delivery of Heroin near a School/Park/High School, Case No. 2016-CF-2012.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. **The parties further agree that the Government will recommend a sentence not to exceed 25 (twenty-five) years in the Bureau of Prisons, and the Defendant will recommend a sentence of not less than 18 (eighteen) years in the Bureau of Prisons, at the time of sentencing.** The parties understand that the Court is neither a party to nor bound by this joint recommendation or the Guidelines recommendations agreed to in this document.

The defendant also agrees, pursuant to the guilty plea to Counts One and Two, to forfeit to the United States all property subject to forfeiture under the applicable statute(s).

### 3. ELEMENTS:

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846 and admits there is a factual basis for the plea, and further, fully understands that the elements of the crime are as follows:

Beginning at an exact time unknown to the Grand Jury, but including August of 2020 and through the date of this Indictment, within the Eastern District of Missouri and elsewhere,

    (i)    two or more persons reached an agreement or came to an understanding to possess with the intent to distribute and distribute controlled substances, including but not limited to a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance;

    (ii)    the Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

    (iii)    at the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

As to Count Two, the defendant admits to knowingly violating Title 18, United States Code, Sections 924(c)(1)(A) and 924(j), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of possession of a firearm in furtherance of a drug trafficking crime, causing the death of one or more persons, are as follows:

    (i)    The defendant committed a drug trafficking crime as set forth in Count One of the Indictment;

    (ii)    The defendant knowingly possessed a firearm in furtherance of that crime; and

    (iii)    The Defendant used the firearm to cause the death of Victim Joel Phillips, which was murder.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On August 20, 2020, St. Louis Metropolitan Police initiated an investigation into the fatal shooting of Joel Phillips (hereinafter referred to as "Phillips"), which occurred at 1420 Hampton Avenue, in the City of St. Louis and within the Eastern District of Missouri, on the parking lot of a McDonald's restaurant. Phillips was discovered deceased in the driver's seat of his vehicle suffering from numerous gunshot wounds. Phillips was found in possession of $1,814 in U.S. currency, a firearm, and 156 capsules containing a mixture of heroin, fentanyl, and tramadol, amounting to approximately 17 grams. Investigators located an Apple brand cellular phone next to Phillips inside his vehicle. Investigators extracted data from the phone, and upon reviewing the data learned that Phillips was using his phone to engage in the sale of controlled substances.

Two days prior to his murder, on August 18, 2020, Phillips arranged to purchase narcotics, specifically fentanyl, from Defendant Cevone WEEDEN, his source of supply. Phillips and WEEDEN arranged to meet near the Dr. King Chop Suey, which is located at 5435 Dr. Martin Luther King Drive, St. Louis, Missouri, within the Eastern District of Missouri. The parties met between approximately 8:05-8:10 p.m. Upon meeting, Phillips robbed Defendant WEEDEN of his narcotic supply, amounting to approximately 1 ounce of fentanyl, and fled the area. Phillips then blocked WEEDEN's phone number,

On August 20, 2020, during the period of time leading up to his murder, Phillips was contacted by individual identified as R.H. R.H. indicated he wanted to buy fentanyl from Phillips. Phillips had no previous contact with R.H. prior to this call. They agreed to meet in the vicinity of 1514 Hampton Avenue, which is the address of the Circle K gas station immediately south of the McDonald's parking lot where Phillips' body was later discovered.

R.H. had no desire to actually purchase drugs. WEEDEN had directed R.H. to contact Phillips in order to arrange a fake drug purchase as a ploy to learn of Phillips' location and to get Phillips out into the open in order for WEEDEN to retaliate against Phillips for the narcotics robbery. Phillips and R.H. exchanged several additional texts and calls, with R.H. claiming he was on his way. However, R.H. was never anywhere near this location. During these contacts, R.H. and WEEDEN were also in communication, with R.H. informing WEEDEN of Phillips' status.

Historical cellular tower data from AT&T related to one of WEEDEN's phones tracked his physical location from North St. Louis County, Missouri at approximately 6:02 p.m. on the day of the murder, arriving in the vicinity of the McDonald's at approximately 6:17 p.m. At 7:05 p.m., shortly before Phillips was shot and killed, WEEDEN turned off his phone. Approximately 20 minutes after Phillips was killed, cellular tower data indicates that at 8:25 p.m. WEEDEN reactivated his phone once back in North St. Louis County, Missouri, at which time WEEDEN again called R.H.

Co-Defendant Herschell PERKINS assisted WEEDEN in carrying out this retaliatory murder by serving primarily as the driver of the vehicle used during the homicide, specifically a black Chevrolet SS sedan with Missouri license plate "RC3 F0J." The Chevrolet SS arrived in the

vicinity of the McDonald's at the same time that WEEDEN arrived pursuant to his phone location data. Additionally, Phillips' vehicle (a Nissan Rogue) arrived at the McDonald's nearly this same time as well. The Chevrolet SS, being driven by PERKINS and with WEEDEN as the passenger, then traveled to several different business parking lots and side streets near the McDonald's over a nearly two-hour period of time in order to conduct physical surveillance of Phillips as he waited on the McDonald's parking lot in his own vehicle.

PERKINS pulled the Chevrolet SS into the parking lot of the Circle K gas station, just south of the McDonald's. While inside the Circle K, PERKINS repeatedly looked in the direction of Phillips' vehicle at the McDonald's. PERKINS then continued to look in this direction as he pumped gas into his vehicle while WEEDEN waited in the passenger seat.

PERKINS parked his vehicle at a Phillips 66 gas station just north of the McDonald's and Phillips at approximately 7:09 p.m., minutes after WEEDEN turned his phone off. PERKINS then entered the gas station, borrowed a screwdriver from the clerk, and proceeded to remove both the front and rear license plates from the Chevrolet SS. After removing the license plates, PERKINS and WEEDEN traveled to different locations surrounding the McDonald's over the next approximately 45 minutes. Just prior to the murder, at approximately 8:03 p.m., PERKINS turned onto a side-street off of Hampton Avenue, across from the McDonald's. Immediately after this, WEEDEN then crossed Hampton Avenue from this location on foot, walking towards the McDonald's, while PERKINS slowly pulled the Chevrolet SS back up to Hampton from the same side street.

WEEDEN then approached Phillips' vehicle on foot, brandished a firearm, and fired at least 12 shots at Phillips, who was sitting in the driver's seat, killing him. WEEDEN then walked back across the street, heading north on Hampton Avenue, where he re-entered PERKINS' vehicle. WEEDEN and PERKINS then fled the area. Responding SLMPD officers discovered Phillips body in his vehicle at the McDonalds' with the aforementioned items.

The parties agree that the 17 grams of fentanyl in Phillips' possession is the same fentanyl Phillips took from WEEDEN. The parties agree that expert testimony in the event of trial would establish that this quantity of fentanyl is inconsistent with an amount solely intended for personal use, and was intended for distribution. The parties agree to hold WEEDEN accountable for 17 grams of a mixture or substance containing fentanyl.

The parties agree that WEEDEN, with the knowing assistance of PERKINS, intentionally shot and killed victim Joel Phillips in retaliation for the victim previously robbing WEEDEN of a quantity of fentanyl and in furtherance of WEEDEN's ongoing drug distribution conspiracy. The parties agree that expert testimony in the event of trial would establish that a retaliatory killing of this nature, related to and in furtherance of a drug trafficking enterprise, is a common occurrence. The parties agree that this killing is murder as defined in Title 18, United States Code, Section 1111, and that WEEDEN, acting together with PERKINS and others, acted with malice aforethought by unlawfully killing Joel Phillips by shooting him, willfully, deliberately, maliciously, and with premeditation.

## 5. STATUTORY PENALTIES:

**Count One:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years.

**Count Two:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than Life, a fine of not more than $250,000, or both such imprisonment and fine. The Court may impose a period of supervised release of not more than 5 years. **The defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least 10 years, consecutive to any other sentence.**

Possibility of Enhanced Criminal Status: In certain situations, under Title 18, United States Code, Section 924(e) (Armed Career Criminal), defendant may be subject to a mandatory minimum sentence of fifteen (15) years and a maximum sentence greater than described above. The defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to defendant's sentence. However, both parties retain the right to litigate whether Section 924(e) applies to defendant's sentence.

**6. U.S. SENTENCING GUIDELINES: 2021 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

a. **Chapter 2 Offense Conduct:**

(1) **Base Offense Level (Count One):** The parties agree that the base offense level is 18, as found in Section 2D1.1(c)(11). The parties agree that the quantity of fentanyl for which the defendant is accountable, including relevant conduct, is at least 16 grams but less than 24 grams, resulting in the agreed Base Offense Level.

(2) **Specific Offense Characteristics (Count One):** The parties agree that the following Specific Offense Characteristics apply: None.

(3) **Base Offense Level (Count Two):** The parties agree that the base offense level is found in Section 2K2.4(b), and the sentencing enhancement where death is caused through use of a firearm is found in Section 2A1.1(a). Section 2A1.1(a) provides that an offense involving first degree murder has a base offense level of 43.

(4) **Specific Offense Characteristics (Count Two):** The parties agree that the following Specific Offense Characteristics apply: None agreed to.

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:**

Count One: The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and

timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**Count Two**: With respect to Count Two, Defendant is not entitled to a deduction for acceptance of responsibility pursuant to Section 2K2.4, note 5.

**(2) Other Adjustments:** The parties agree that the following additional adjustments apply: None.

**c. Other Adjustment(s) and Disputed Adjustments:**

None.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level for Count One is ~~17~~ 15 [handwritten: GSa PSM GW]. The parties estimate that the Total Offense Level for Count Two is 43. These estimations are conditioned upon Defendant not being deemed a Career Offender. Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing

Page **11** of **17**

Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation,

whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_07/19/2022_
Date

_8/1/22_
Date

_8-1-22_
Date

_8/1/22_
Date

GEOFFREY S. OGDEN
Assistant United States Attorney

NATHAN CHAPMAN
Assistant United States Attorney

CEVONE WEEDEN
Defendant

PATRICK KILGORE
Attorney for Defendant

Page 17 of 17